**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NBCUNIVERSAL MEDIA, LLC, | Case No. 26-cv-02536 |
| Plaintiff, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff NBCUniversal Media, LLC ("Plaintiff" or "NBCUniversal") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois (the "Counterfeit Products"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling Counterfeit Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff is a limited liability company formed in Delaware with its headquarters in New York, New York.

5.      Plaintiff is one of the world's leading media and entertainment companies, creating world-class content distributed across its portfolio of film, television, and streaming. One of Plaintiff's most successful television series is The Office, which originally aired from March 2005 until May 2013. The Office ran for a total of 201 episodes across nine seasons, with millions of views per episode. Its top-rated episode, season five's "Stress Relief," received over 24.6 million views at the time of its premiere. Over the years, the show became a cultural phenomenon and a fixture in modern television and comedy. Today, it remains a beloved series, continuing to attract new fans worldwide.

6.      The Office, adapted from the BBC series of the same name, followed the everyday lives and workplace antics of the fictional Dunder Mifflin Paper Company, Inc.'s ("Dunder Mifflin") Scranton office in the form of a mockumentary. Steve Carell played Michael Scott, the regional manager of Dunder Mifflin.  One of the many quirks of working at Dunder Mifflin included Michael Scott's annual "Dundie" awards, which was traditionally held at the local Chili's restaurant. The season two premiere episode "The Dundies" is considered by some to be pivotal to the series' success as it helped establish the series' unique blend of comedic and heartfelt storytelling.

7.      The series also followed the Dunder Mifflin team outside of the workplace. For example, the series depicted the fictional Schrute Farms, a beet farm and bed and breakfast owned and operated by Dwight Schrute, Michael Scott's assistant. Schrute Farms is known for its beet-

themed experiences and "agrotourism" attractions. Given viewership's positive reception and the now legacy of the farm, Schrute Farms merchandise has become a staple among fans.

8.     The Office received critical acclaim throughout its run, winning, among other awards, five Primetime Emmy awards, including Outstanding Comedy Series in 2006, Outstanding Writing for a Comedy Series in 2007, and Outstanding Directing for a Comedy Series in 2009. The cast likewise gained notoriety and acclaim through the series, with several members receiving nominations and awards for their work on the show. Notably, Steve Carell won a Golden Globe for Best Actor in a Comedy Series in 2006 for his depiction of Michael Scott.

9.     Today, The Office has been licensed in over 230 territories, airing on numerous television networks and streaming platforms around the world. The Office is also currently one of the most-watched series on the Peacock platform, with over 1.7 billion hours of viewership and accounting for more than seven percent of all-time Peacock usage.

10.     Products sold under the NBCUniversal brand and associated with The Office include items such as apparel, accessories, home and office décor, and souvenirs (collectively, the "The Office Products"). The Office Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers and websites, such as Walmart, Target, and Hot Topic, and the official nbcstore.com website and Plaintiff's Amazon store.

11.     Plaintiff incorporates a variety of distinctive marks in the designs of its various The Office products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office. The Office products often include at least one of Plaintiff's registered trademarks. Often several of Plaintiff's marks are displayed on a single The Office product.

4

Plaintiff uses its trademarks in connection with the marketing of The Office products, including the following marks which are collectively referred to as the "THE OFFICE Trademarks."

| Registration Number | Trademark |
|---|---|
| 5,235,217<br>7,762,967 | DUNDER MIFFLIN |
| 7,576,006<br>7,584,331 | DUNDIE |
| 7,972,047<br>7,972,035<br>7,972,034 | SCHRUTE FARMS |

12.     The above U.S. registrations for the THE OFFICE Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. THE OFFICE Trademarks have been used exclusively and continuously by Plaintiff for many years, and have never been abandoned. The registrations for THE OFFICE Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use THE OFFICE Trademarks pursuant to 15 U.S.C. § 1057(b).   True and correct copies of the United States Registration Certificates for the THE OFFICE Trademarks are attached hereto as **Exhibit 1**.

13.     THE OFFICE Trademarks are distinctive when applied to the The Office Products, signifying to the consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards.  Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards.

14.     The innovative marketing and product designs of the The Office Products have enabled the NBCUniversal brand associated with The Office to achieve widespread recognition and fame and have made THE OFFICE Trademarks some of the most well-known marks in the entertainment industries. The widespread fame, outstanding reputation, and significant goodwill

associated with the Plaintiff and The Office have made the THE OFFICE Trademarks invaluable assets of Plaintiff.

15.     Plaintiff has expended substantial time, money and other resources in advertising and promoting THE OFFICE Trademarks.  In fact, Plaintiff has expended millions of dollars in advertising, promoting, and marketing featuring the THE OFFICE Trademarks. The Office Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the THE OFFICE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. The Office Products have become among the most popular of their kind in the U.S. and the world. The THE OFFICE Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the THE OFFICE Trademarks is of incalculable and inestimable value to Plaintiff.

**The Defendants**

16.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics

6

used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

18.     The success of Plaintiff's brand has resulted in significant counterfeiting of the THE OFFICE Trademarks. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

19.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.*; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

20.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, have sold Counterfeit Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 2**.

21.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of its THE OFFICE Trademarks, and none of the Defendants are authorized retailers of genuine The Office Products.

---

[5] *Id.* at 22.
[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

22.     Many Defendants also deceive unknowing consumers by using the THE OFFICE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for The Office Products.  Other e-commerce stores operating under the Seller Aliases omit using THE OFFICE Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for The Office Products.

23.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25.     Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.  The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

26.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28.     Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the THE OFFICE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

29.     Defendants' unauthorized use of the THE OFFICE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

30.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered THE OFFICE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  THE OFFICE Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from The Office Products offered, sold, or marketed under the THE OFFICE Trademarks.

32.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the THE OFFICE Trademarks without Plaintiff's permission.

33.     Plaintiff is the exclusive owner of the THE OFFICE Trademarks.  The United States Registrations for the THE OFFICE Trademarks (**Exhibit 1**) are in full force and effect.  On information and belief, Defendants have knowledge of Plaintiff's rights in the THE OFFICE Trademarks and are willfully infringing and intentionally using counterfeits of the THE OFFICE Trademarks.  Defendants' willful, intentional, and unauthorized use of the THE OFFICE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

34.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known THE OFFICE Trademarks.

36.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

39.     By using the THE OFFICE Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

40.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the THE OFFICE Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine The Office Product or is not authorized by Plaintiff to be sold in connection with the THE OFFICE Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine The Office Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the THE OFFICE Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the THE OFFICE Trademarks, and damaging Plaintiff's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including

the THE OFFICE Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, upon Plaintiff's request, those with notice of the injunction including, without limitation, any online marketplace platforms such as Amazon, PayPal, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the THE OFFICE Trademarks;

3)  That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the THE OFFICE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)  In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the THE OFFICE Trademarks;

5)  Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a); and

6)  Award any and all other relief that this Court deems just and proper.

Dated this 6th day of March 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff NBCUniversal Media, LLC*